**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DENZIL LAWRENCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 19-00317 NJR-GCS |
| | ) |
| GREGORY SCOTT. et al., | ) |
| | ) |
| Defendants. | ) |

<u>**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**</u>

NOW COME the Defendants, JOSEPH HARPER, BARRY SMOOT, JARRETT BROOKS, SHIRLEY FORCUM, GREGORY SCOTT, WILLIAM MILLER, MELISSA MILLER, and MICHAEL SIEGFRIED, by and through their attorney, KWAME RAOUL, Attorney General of the State of Illinois, and hereby provide the following answer and affirmative defenses to Plaintiff's Amended Complaint (Doc. 14).

## INTRODUCTION

Lawrence brings this action for money damages, declaratory, and injunctive relief pursuant to the Civil Rights Act, 42 U.S.C. § 1983, to address deprivations of his Constitutional rights by institutionally-based brutality at the Chester Mental Health Center (the "Chester Facility").

**RESPONSE: Defendants admit Plaintiff is brining this case pursuant to the Civil Rights Act for alleged institutionally-based brutality at the Chester Mental Health Center.**

1.   Now a resident of the state of Florida, Lawrence was an Illinois resident at the time he filed this cause of action, as well as during all times relevant to the allegations in this First Amended Complaint.

**RESPONSE: Defendants admit that Plaintiff was a resident of the Chester Facility during the time the acts outlined in the First Amended Complaint allegedly took place. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

2. Defendant **Illinois Department of Human Services** ("IDHS") is an agency within the state of Illinois and a legal entity with the capacity to sue and be sued. It operates the Chester Facility and employs the individual defendants who have engaged in the unlawful acts here pursuant to policies, practices and customs of the IDHS.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

3. Defendant **Joseph Harper** is a citizen of the state of Illinois and sued in his individual capacity, as well as in his official capacity as Hospital Administrator of the Chester Facility when Lawrence first arrived there. As the Hospital Administrator, Defendant Harper oversaw all clinical and administrative services at the Chester Facility, exercised and delegated final decision-making authority to the other named Defendants, and trained and supervised them in the performance of their duties. He was acting under color of law and within the scope of his employment with the IDHS.

**RESPONSE: Defendant Harper admits that he is a citizen of Illinois. Defendant Harper also admits that at the time of the allegations he was the Hospital Administrator of the Chester Facility and that he was acting under color of law and within the scope of his employment with IDHS. Defendants deny the remaining allegations contained in this paragraph.**

4.    Defendant **Gregg Scott** is a citizen of the state of Illinois and sued in his individual capacity, as well as in his official capacity as Hospital Administrator of the Chester Facility after replacing Defendant Harper on June 1, 2018.  As the Hospital Administrator, Defendant Harper oversaw all clinical and administrative services at the Chester Facility, exercised and delegated final decision-making authority to the other named Defendants, and trained and supervised them in the performance of their duties. He was acting under color of law and within the scope of his employment with the IDHS.

**RESPONSE: Defendant Scott admits that he is a citizen of Illinois.  Defendant Scott also admits that on June 1, 2018 he was the Hospital Administrator of the Chester Facility and that he was acting under color of law and within the scope of his employment with IDHS. Defendants deny the remaining allegations contained in this paragraph.**

5.    Defendant **Barry Smoot** is a citizen of the state of Illinois and sued in his individual capacity, as well as in his official capacity as the Director of Security at the Chester Facility at all times relevant to the allegations in this Complaint. As the Director of Security, exercised and delegated final decision-making authority to the entire security staff at the Chester Facility, and trained and supervised them in the performance of their duties. He was acting under color of law and within the scope of his employment with the IDHS.

**RESPONSE: Defendant Smoot admits he is a citizen of Illlinois.  Defendant Smoot also admits that he was the Director of Security at the Chester Facility beginning in April 2018 and that he was acting under color of law and within the scope of his employment with IDHS. Defendants deny the remaining allegations contained in this paragraph.**

6.     Defendant Shirley Forcum is a citizen of the state of Illinois and sued in his individual capacity, as well as in her official capacity as a Social Worker on Lawrence's Treatment Team and a Unit Director for Able Unit at the Chester Facility at all times relevant to the allegations in this Complaint. As a Social Worker on Lawrence's Team, she maintained and administered his mental health records and coordinated the various specialists on his Treatment Team. As Unit Director, she served as Head of Able Unit's Treatment Team, exercised and delegated final decision-making authority to the entire mental health services team on Able Unit, and trained and supervised them in the performance of their duties. She was acting under color of law and within the scope of her employment with the IDHS.

**RESPONSE: Defendant Forcum admits she is a citizen of Illinois. Defendant Forcum also admits that at the time of the allegations she was a Social Worker and Unit Director at the Chester Facility and that she was acting under color of law and within the scope of her employment with IDHS. Defendants deny the remaining allegations contained in this paragraph.**

7.     Defendant William Miller is a citizen of the state of Illinois and sued in his individual capacity, as well as in his official capacity as a Unit Security Supervisor ("STA II") at the Chester Facility at all times relevant to the allegations in this Complaint. As a STA II, he exercised and delegated final decision-making authority to the STAs on Able

Unit, and trained and supervised them in the performance of their duties. He was acting under color of law and within the scope of his employment with the IDHS.

**RESPONSE: Defendant Miller admits that he is a citizen of Illinois. Defendant Miller also**

admits that at the time of the allegations he was a Charge Aide at the Chester Facility and he was acting under color of law and within the scope of her employment with IDHS. Defendants deny the remaining allegations contained in this paragraph.

8.      Defendant Bruce Williams is a citizen of the state of Illinois and sued in his individual capacity, as well as in his official capacity as a Security Therapy Aide ("STA I") at the Chester Facility at all times relevant to the allegations in this Complaint. As a STA I, he was responsible for monitoring the safety and security of patients at the Chester Facility. He was acting under color of law and within the scope of his employment with the IDHS.

RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

9.      Defendant Melissa Miller is a citizen of the state of Illinois and sued in her individual capacity, as well as in her official capacity as a STA I at the Chester Facility at all times relevant to the allegations in this Complaint. As a STA I, she was responsible for monitoring the safety and security of patients at the Chester Facility. She was acting under color of law and within the scope of her employment with the IDHS.

RESPONSE: Defendant Miller admits she is a citizen of Illinois.  Defendant Miller also admits that at the time of the allegations she was a Security Therapy Aide ("STA") 1 at the Chester Facility and her duties included monitoring the safety and security of patients. Defendant Miller admits she was acting under color of law and within the scope of her employment with IDHS.  Defendants deny the remaining allegations contained in this paragraph. Defendants deny the remaining allegations contained in this paragraph.

10.   Defendant **Anthony Anderson** is a citizen of the state of Illinois and sued in his individual capacity, as well as in his official capacity as a STA I at the Chester Facility at all times relevant to the allegations in this Complaint. As a STA I, he was responsible for monitoring the safety and security of patients at the Chester Facility. He was acting under color of law and within the scope of his employment with the IDHS.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

11.   Defendant **Michael Siegfried** is a citizen of the state of Illinois and sued in his individual capacity, as well as in his official capacity as a STA I at the Chester Facility at all times relevant to the allegations in this Complaint. As a STA I, he was responsible

for monitoring the safety and security of patients at the Chester Facility. He was acting under color of law and within the scope of his employment with the IDHS.

**RESPONSE: Defendant Siegfried he is a citizen of Illinois.  Defendant Seigfried also admits that at the time of the allegations he was a STA 1 at the Chester Facility and his duties included monitoring the safety and security of patients.   Defendant Siegfried admits he was acting under color of law and within the scope of her employment with IDHS.  Defendants deny the remaining allegations contained in this paragraph. Defendants deny the remaining allegations contained in this paragraph.**

12.    Defendant **Jarrett Brooks** is a citizen of the state of Illinois and sued in his individual capacity, as well as in his official capacity as a Cook at the Chester Facility at all times relevant to the allegations in this Complaint. As a Cook, he prepared and served nutritional meals to the patients at the Chester Facility, consistent with their dietary needs. He was acting under color of law and within the scope of his employment with the IDHS.

**RESPONSE: Defendant Brooks he is a citizen of Illinois.  Defendant Brooks also admits admits that at the time of the allegations he was a Supply Service Worker at the Chester Facility and his duties included serving meals to patients.  Defendant Brooks admits he was acting under color of law and within the scope of her employment with IDHS.  Defendants deny the remaining allegations contained in this paragraph. Defendants deny the remaining allegations contained in this paragraph.**

13.    Each of the Defendants, their employees and agents, participated personally in the unlawful conduct challenged here and, to the extent that they did not personally participate, authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts that resulted in the unlawful conduct and the harm suffered by Lawrence.  Each acted in concert with the other and their joint actions or omissions caused the violation of Lawrence's rights.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

14.     On information and belief, all of the Defendants acted pursuant to an express or implied custom, policy, practice, or procedure within the Chester Facility that allows STAs and other staff members to violate written rules, abuse the rights of patients with impunity, and then to cover up these actions behind a "blue wall" of silence among the Chester Facility staff.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

15.     Lawrence's case arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as under 42 U.S.C. § 1981 and is expressly authorized by 42 U.S.C. § 1983 as a civil action to redress the deprivation of rights under color of state law. This Court accordingly has jurisdiction over it pursuant to 28 U.S.C. §§ 1331 and 1343 and pursuant to the court's supplemental jurisdiction, as codified in 28 U.S.C. § 1367(a).

**RESPONSE:  Defendants admit Plaintiff alleges civil rights violations and deprivations of his First, Fourth, and Fourteenth Amendment rights.  Defendants admit the remaining allegations contained in this paragraph.**

16.     Venue is proper in the District Court for the Southern District of Illinois under 28 U.S.C § 1391(b), because the events forming the basis of this Complaint occurred in this District.

**RESPONSE:  Defendants admit venue is proper in the Southern District of Illinois.**

## FACTUAL ALLEGATIONS

17.    On May 23, 2017, The Twelfth Judicial Circuit Court of Will County, Illinois ordered Lawrence to the Illinois Department of Human Services (the "Department") for an evaluation, following his acquittal to the charge of arson[2] upon receiving a verdict of Not Guilty by Reason of Insanity ("NGRI").

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

18.    The Department evaluated Lawrence, determined that he needed continuing inpatient mental health services, and transferred him to the Forensic Treatment Program at the Chester Facility, where it assigned him a clinical treatment team to implement a treatment plan and improve his mental condition so that he could be released back into the community.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

19.    Lawrence, a United States Army veteran of the Iraqi War, who has been diagnosed with Post Traumatic Stress Disorder ("PTSD"), was a *patient* involuntarily committed to the Chester Facility – *not* a prisoner convicted of a crime – and he enjoyed the full Constitutional rights and protections of any citizen of the United States of America.

**RESPONSE: Defendants admit that as a patient at the Chester facility Plaintiff is not a prisoner convicted of a crime.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

## The Chester Facility Greeting

20.    By the time Lawrence arrived at the Chester Facility on September 26, 2017,
he already had been under the custody and care of the IDHS for over four months and
that state Agency, charged by law with treating his mental health issues, had not been
forcing him to take any prescribed medications.  Nevertheless, on his first day there, a
gang of four STAs, led by Michael McDonald (Charge Aid/STAII), positioned themselves
in the doorway of his room and demanded to know: "Are we going to have any problems
with you taking your medication while you're here?

**RESPONSE:  Defendants admit IDHS is charged with treating mental health issues of
individuals.  Defendants deny the remaining allegations contained in this paragraph.**

## Walking the Able Unit Gauntlet

21.    Over the next several weeks, Lawrence settled into the daily routine of Able
Unit in the Chester Facility (the clinical unit to which he had been assigned). But he began
to notice a disturbing trend: at meal times, non-essential employees – those who did not
provide healthcare or treatment to any of the patients on Able Unit – began to congregate
in the hallway leading to the dining room in greater numbers and with greater frequency.

**RESPONSE:  Defendants admit Plaintiff was housed on Able Unit in the Chester Facility.
Defendants admit that when patients would leave at meal times many employees would be
in the hallway in order to provide safety and security to the patients when they were moved
as a group.  Defendants deny the remaining allegations contained in this paragraph.**

22.    As weeks turned into months, it came to pass that virtually every time the
patients made their way to the dining facility for a meal, this gauntlet of outside staff

pressed closer and closer to the patients, staring them down, taunting them with increasingly rude and disrespectful comments, and steadily escalating the encounters toward some unknown (to the patients) yet inevitable confrontation.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

23. By December 8, 2017, Lawrence began skipping most of the dining room meals; choosing candy, snacks and prune juice in his own room over what had become a humiliating mealtime ritual.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

24. On about December 11, 2017, Lawrence requested that Heather Parker (a Chester Facility social worker) allow him to take his meals on the unit – a practice that the staff often allowed patients for a variety of reasons. Parker arranged for Lawrence to meet with Bree Barnett (nurse) and McDonald to discuss the issue. The meeting ended with both Barnett and McDonald refusing to allow him to take meals in the unit – warning him that he would not get any food unless he took his meals in the dining room.

**RESPONSE: Defendants admit that some patients are allowed to have their meals on the unit with the permission of a medical professional. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

25.    Lawrence still refused to go to the dining room, so later that day Parker arranged for him to meet with Supervising Nurse Tammi Craig. Craig directed someone on the staff to bring a meal to Lawrence while he stayed in the unit. Lawrence told Craig that he intended to file a grievance over the Able Unit Gauntlet with the Chester Facility's Office of Inspector General ("OIG").

**RESPONSE: Defendants admit that patients are able to refuse to go to the dining room during meal times.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

26.    Lawrence met with Doug Hogan (Head of Security and the Chester Facility's OIG Representative) the next day, to complain about two things: walking the Able Unit Gauntlet and the fact that some of the staff was abusing patients. Hogan told Lawrence that the he would not help him with Able Unit Gauntlet issue.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

27.    For the next few days, Lawrence went to the dining room on only a couple more occasions. Craig told him that she would not authorize any more meal deliveries to him on the unit and he quickly lost 15 pounds in less than a week.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

The Chester Facility Begins Punishing Lawrence

28.     On about December 15, 2017, as the patients made their way to the dining
room for breakfast, Chris Zang (housekeeping staff) joined the outsiders on the Able Unit
Gauntlet. Standing close to the procession of patients, he stared each one down as they
passed by. He approached Lawrence aggressively, pressing his face so close that their
noses nearly touched and K. Koeneman (STA I) started laughing. Lawrence asked Zang
why he was harassing patients and Koeneman promptly shoved him in the chest, barking
at him to "get back inside!" Lawrence complied, yet she filed a false report on the
incident, claiming that Lawrence had threatened a staff member.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to
the truth of the allegations contained in this paragraph.**

29.     The next day, the Chester Facility punished Lawrence with a restriction of
rights; prohibiting him from taking his meals in the dining room, restricting him to the
unit and now *requiring* him to take his meals on the unit pursuant to the facility's meal
monitoring protocol.

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to
the truth of the allegations contained in this paragraph.**

30.     On about December 18, 2017, Lawrence's clinical treatment team –
including Shirley Forcum (social worker) and Dr. Nageswararao Vallabhaneni
(psychiatrist) – met with him to discuss the Zang/Koeneman encounter. The team
decided to allow Lawrence to take his meals on the unit.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the
truth of the allegations contained in this paragraph.**

31.     Defendant Williams opposed the decision and told others on the Chester Facility staff every chance he got. He aggressively confronted Lawrence anytime he tried to take his meals on the unit again and consistently spoke to him in a most degrading way. Defendant Melissa Miller also consistently voiced her disapproval and openly stated that now it was her personal mission to force Lawrence to return to the dining room for meals.

**RESPONSE:  Defendants deny the allegations in this paragraph.**

### The Chester Facility's Water-Tox Hoax

32.     The Chester Facility staff immediately punished Lawrence by placing him on a "water-tox" protocol. The staff often weaponized this protocol to punish patients – it allows them to shut down the toilet in the patient's room and drastically limit the patient's water intake. Water toxicity is a condition caused by an electrolyte imbalance from drinking massive amounts of water. It can only be confirmed with a blood test which, of course, was never done for Lawrence. This new protocol restricted him to, among other things, monitored use of the bathroom, monitored meals, and urinating only in cup.

**RESPONSE:  Defendants admit that there is a medical treatment that is available at the Chester Factility that allows the staff to limit a patients available water in order to combat their medical condition. Defendants deny Plaintiff was placed in the water-tox protocol as punishment.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaing allegations contained in this paragraph.**

33.    Over the next couple of months, members of both the nursing and security staffs falsified Lawrence's meal observation record to give the impression that he was eating less food than he actually did. This in turn provided them with the basis to inflict even more punitive measures on him.

**RESPONSE: Defendants deny the allegations in this paragraph.**

34.    On approximately March 28, 2018, Lawrence and another patient, MV, spoke with a third patient, JM, about avoiding Defendant Melissa Miller, with whom JM had argued earlier in the day. Defendants Melissa Miller and Williams saw and heard the three patients discussing the incident and retaliated against them with a "shake down." Then, while the three patients were in the gym, the two Defendants unlawfully searched their rooms and removed personal items belonging to the patients.

**RESPONSE:  Defendants admit that they conducted a unit wide search on or about March 28, 2019.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

35.    When the three patients requested grievance forms to complain, the Chester Facility responded by "shaking down" the entire unit.

**RESPONSE: Defendants deny the allegations in this paragraph.**

36.    Before and during the "shake down" members of the staff, in particular Defendant Melissa Miller, threatened and intimidated the patients with racist taunts. Defendant Williams bragged: "We're on some white power shit."

**RESPONSE: Defendants deny the allegations in this paragraph.**

37.    The next day the staff conducted yet another unit "shake down," accompanied again with threatening taunts and intimidation directed at the patients. At one point, Defendant Williams yelled out: "All this trouble because someone was mad about a crayon and decided to write complaints" [referring to MV].

**RESPONSE:  Defendants admit that there was one search of Plaintiff's unit on or about March 28, 2019.  Defendants lack knowledge or information sufficient to form a belief as to the truth regarding whether a second search was conducted of Plaintiff's unit around that same date.  Defendants deny the remaining allegations in this paragraph.**

38.    Lawrence, MV and JM again asked for complaint forms to file grievances about the retaliatory shakedowns and, in response, Defendant Williams denied Lawrence and MV barber privileges that week. The Chester Facility staff often used barber privileges to punish patients who complained about staff abuse and reward patients who were compliant with the abuse.

**RESPONSE: Defendants deny that barber privileges are used to punish patients. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

39.    On approximately April 3, 2018, the staff conducted the third unit "shake down." On this occasion, Defendant William Miller (Melissa's husband) told MV: "Since you guys want to file complaints, we're going to keep having shakedowns."

**RESPONSE:  Defendants lack knowledge or information sufficient to form a belief as to the truth regarding whether there was a search of Plaintiff's unit on April 3, 2018.  Defendant Miller denies saying "[s]ince you guys want to file complaints, we're going to keep having shakedowns."  Defendants deny the remaining allegations contained in this paragraph.**

40.     On the same day, Lawrence filed another complaint, this one over the staff punishing him in retaliation for, among other things:  filing complaints against the staff; helping JM; and receiving permission from his treatment team to take meals in the unit (after complaining about the Able Unit Gauntlet).

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

### The Night Shift Makes Noise

41.     The night staff commonly harassed the patients while they tried to sleep. In mid-April 2018, Lawrence filed the first of three grievances about the night staff making loud noises intended to disrupt his sleep. In response, the night staff simply retaliated – they continued making the loud noise and, in fact, moved closer to his door to make sure they disturbed him even more.

**RESPONSE:  Defendants deny they made noise to disrupt Plaintiff's sleep.  Defendants lack knowledge or information sufficient to form a belief as to the truth regarding whether Plaintiff filed multiple complaints regarding the alleged noise.  Defendants deny the remaining allegations contained in this paragraph.**

42.     Then, on about April 23, 2018, Defendant Siegfried retaliated against Lawrence by moving him to a room that was close to a patient notorious for making loud noises all night.

**RESPONSE:  Defendant Siegfried admits that he facilitated Plaintiff changing rooms on or about April 23, 2018 following Plaintiff's request to change rooms.  Defendant Siegfried denies he retaliated against Planitiff by moving him.  Defendants deny the remaining allegations contained in this paragraph.**

43.     When Lawrence objected, Defendant Siegfried promptly filed a false report,
alleging that Lawrence threatened him; which, in turn, gave the staff grounds to restrict
his off-unit privileges.

**RESPONSE: Defendant Siegfried denies he filed a false report against Plaintiff. Defendants admit some reports could restrict Plaintiff's off-unit privilieges. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### The Kitchen Staff Turns Up the Heat

44.     Around April 30, 2018, when Lawrence started taking his meals in the
dining room again, members of the kitchen staff began harassing him. This lasted until
his transfer to the Elgin Mental Health Center on August 18, 2018. Jarret Brooks (cook),
in particular, stared and gestured at him in sexually suggestive ways. Brooks even
claimed to others that he was contaminating Lawrence's food with feces and semen.

**RESPONSE:     Defendant Brooks denies the allegations contained in this paragraph. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

### The Security Staff Recruits Patient Capos to Harass and Assault Lawrence

45.     By the end of July, the staff was encouraging patient AW to take personal
items belonging to Lawrence and then directing him to threaten Lawrence and pick a
fight with him.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

19-317-NJR-GCS                    18

46.     On about August 2, 2018 Anthony Anderson (STA I) provoked patient HP
to verbally harass Lawrence for over an hour. Then, later in the day, Anderson assaulted
Lawrence by striking him repeatedly in the head and then holding Lawrence down so
that HP could do the same.

**RESPONSE: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.**

The Chester Facility's Complaint Protocol is Retaliation

47.     In addition to speaking up on his own behalf, on many occasions during
his stay at the Chester Facility, Lawrence saw staff members harass and abuse other
patients: JL, RS and DP in particular. He reported these incidents internally to Chester
Facility's administrative staff, to its OIG and also to an outside advocacy group known
as Equip for Equality.

**RESPONSE:  Defendants deny they harassed and abused patients at the Chester Facility. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

48.     In response, the Defendants targeted Lawrence with a steady, consistent
stream of abuse, harassment and retaliation that lasted until his transfer to the Elgin
Mental Health Center on August 18, 2018.

**RESPONSE: Defendants deny they targeted, abused, or retaliated against Plaintiff. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.**

49.     Staff members called him a "snitch;" told him "nobody likes a snitch;" and
threatened him with "Don't be next."

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

50.     In addition to the incidents above, the Defendants and other staff members
also falsified incident reports about Lawrence; falsified his medical records; conducted
sham investigations into his complaints; made it appear as if they were videotaping him
with their cell phones; unlawfully walked in on him while he showered; physically
assaulted him; and directed other patients to harass and assault him.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

51.     Defendants IDPH, Harper, Scott, Smoot and Forcum directed and/or
ratified each unlawful act in this retaliation campaign – all of which were carried out by
Defendants William Miller, Williams, Melissa Miller, Anderson, Siegfried or Brooks, as
well as other staff members at the Chester Facility – pursuant to express or implied
customs, policies, practices or procedures.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

## CLAIMS FOR RELIEF

### COUNT I:
### RETALIATION IN VIOLATION OF THE FIRST AMENDMENT

52.     Lawrence repeats and realleges Paragraphs 1–50 of this First Amended
Complaint as if set forth fully herein.

**RESPONSE: Defendants admit Plaintiff seeks to re-allege and incorporate herein by reference the foregoing paragraphs 1-50, as if set forth in full herein. Defendants restate their prior answers to paragraphs 1-50.**

53.    At all relevant times, pursuant to the First Amendment and 42 U.S.C. § 1983,

Lawrence had a right to engage in protected speech without fear of retaliation by members of the Chester Facility.

**RESPONSE:  Defendants admit the allegations contained in this paragraph.**

54.    Defendants and their employees and agents violated Lawrence's right to engage in protected speech by retaliating against him with the unlawful shakedowns; unlawful seizures of his personal property, liberty and privileges; excessive use of force, physical assaults; and the continuing campaign of retaliation described above.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

55.    Defendants engaged in these unlawful acts with the specific intent to deprive Lawrence of his constitutional right to engage in protected speech.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

56.    The acts of the Defendants and their employees and agents were intentional in failing to protect and preserve Lawrence's rights and, at a minimum, Defendants were deliberately indifferent to the likely consequence that his protected speech would be unlawfully restricted.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

57.    Any reasonable member of the Chester Facility staff knew or should have known of this right as it was clearly established at the time, based on past circumstances of similar constitutional and statutory violations of the law.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

19-317-NJR-GCS                    21

58.    As a direct and/or proximate result of Defendants' retaliatory actions,

Lawrence suffered injury and damages.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

COUNT II:
EXCESSIVE USE OF FORCE IN VIOLATION OF THE
FOURTEENTH AMENDMENT

59.    Lawrence repeats and realleges Paragraphs 1-50 of this First Amended

Complaint as if set forth fully herein.

**RESPONSE: Defendants admit Plaintiff seeks to re-allege and incorporate herein by reference the foregoing paragraphs 1-50, as if set forth in full herein. Defendants restate their prior answers to paragraphs 1-50.**

60.    At all relevant times, pursuant to the Fourteenth Amendment and 42 U.S.C.

§ 1983, Lawrence had a right to bodily integrity and to be free from the excessive use of

force by members of the Chester Facility staff.

**RESPONSE:  Defendants admit the allegations contained in this paragraph.**

61.    Defendants and their employees and agents violated Lawrence's right to

bodily integrity and to be free from the excessive use of force by members of the Chester

Facility staff by retaliating against him with the physical assaults described above.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

62.    Defendants engaged in theses unlawful acts with the specific intent to

deprive Lawrence of his constitutional right to bodily integrity and to be free from the

excessive use of force by members of the Chester Facility staff.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

63.     The acts of the Defendants and their employees and agents were intentional

in failing to protect and preserve Lawrence's rights and, at a minimum, Defendants were

deliberately indifferent to the likely consequence that he would be subjected to the

excessive use of force by staff members at the Chester Facility.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

64.     Any reasonable member of the Chester Facility staff knew or should have

known of this right as it was clearly established at the time, based on past circumstances

of similar constitutional and statutory violations of the law.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

65.     As a direct and/or proximate result of Defendants' retaliatory actions,

Lawrence suffered injury and damages.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

**COUNT III:
RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL
PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND
42 U.S.C. § 1981**

66.     Lawrence repeats and realleges Paragraphs 1–50 of this First Amended

Complaint as if set forth fully herein.

**RESPONSE: Defendants admit Plaintiff seeks to re-allege and incorporate herein by reference the foregoing paragraphs 1-50, as if set forth in full herein. Defendants restate their prior answers to paragraphs 1-50.**

67.     At all relevant times, pursuant to the Fourteenth Amendment, 42 U.S.C. §
1981, and 42 U.S.C. § 1983 Lawrence, an African American, had a clearly established
constitutional and statutory right to be free from racially motivated beatings, searches
and seizures, shakedowns, and punitive measures, and to enjoy the equal protection of
the laws.

**RESPONSE: Defendants admit the allegations contained in this paragraph.**

68.     Defendants and their employees and agents violated these rights belonging
to Lawrence by engaging in the beatings, searches and seizures, shakedowns, and
punitive measures described above.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

69.     Defendants engaged in these unlawful acts with the specific intent to
deprive Lawrence of his constitutional right to be free from racially motivated beatings,
searches and seizures, shakedowns, and punitive measures, and his right to enjoy the
equal protection of the laws.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

70.     The acts of the Defendants and their employees and agents were intentional
in failing to protect and preserve Lawrence's rights and, at a minimum, they were
deliberately indifferent to the likely consequence that members of the Chester Facility
would subject him to racially motivated beatings, searches and seizures, shakedowns,
and punitive measures and that he would be unlawfully prevented from enjoying the
equal protection of the laws.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

19-317-NJR-GCS                    24

71.    Any reasonable member of the Chester Facility staff knew or should have

known of these rights as they were clearly established at the time, based on past

circumstances of similar constitutional and statutory violations of the law.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

72.    As a direct and/or proximate result of Defendants' unlawful acts, Lawrence

suffered injury and damages.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

### COUNT IV:
### UNREASONABLE SEIZURE OF PROPERTY , LIBERTY AND PRIVILEGES
### IN VIOLATION OF THE FOURTH AMENDMENT

73.    Lawrence repeats and realleges Paragraphs 1–50 of this First Amended

Complaint as if set forth fully herein.

**RESPONSE: Defendants admit Plaintiff seeks to re-allege and incorporate herein by reference the foregoing paragraphs 1-50, as if set forth in full herein.  Defendants restate their prior answers to paragraphs 1-50.**

74.    At all relevant times, pursuant to the Fourth Amendment and 42 U.S.C. §

1983, Lawrence had a right to be free from the unreasonable seizure of his property,

liberty and privileges caused by unlawful shakedowns, falsified incident reports, falsified

medical records, unlawful strip searches, and unlawful restrictions on his privileges.

**RESPONSE: Defendants admit the allegations contained in this paragraph.**

75.    Defendants and their employees and agents violated these rights by engaging in the unlawful shakedowns, falsified incident reports, falsified medical records, unlawful strip searches, and unlawful restrictions on his privileges described above.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

76.    Defendants engaged in these unlawful acts with the specific intent to deprive Lawrence of his constitutional right to be secure in his property, liberty and privileges.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

77.    The acts of the Defendants and their employees and agents were intentional in failing to protect and preserve Lawrence's rights and, at a minimum, Defendants were

deliberately indifferent to the likely consequence that his property, liberty and privileges would be unlawfully seized.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

78.    Any reasonable member of the Chester Facility staff knew or should have known of these rights as they were clearly established at the time, based on past circumstances of similar constitutional and statutory violations of the law.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

79.    As a direct and/or proximate result of Defendants' unlawful acts, Lawrence suffered injury and damages.

**RESPONSE: Defendants deny the allegations contained in this paragraph.**

19-317-NJR-GCS                    26

## REQUEST FOR RELIEF

80. Lawrence therefore requests that this Court enter judgment in his favor and against the Defendants Williams and Miller and award the following relief:

> a. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by in an amount to be determined at trial, jointly and severally against all Defendants;

**RESPONSE: Defendants deny Plaintiff is entitled to any relief.**

> b. Economic losses on all claims allowed by law, jointly and severally against all Defendants;

**RESPONSE: Defendants deny Plaintiff is entitled to any relief.**

> c. Special damages in an amount to be determined at trial, jointly and severally against all Defendants;

**RESPONSE: Defendants deny Plaintiff is entitled to any relief.**

> d. Punitive damages in an amount to be determined at trial, jointly and severally against all Defendants;

**RESPONSE: Defendants deny Plaintiff is entitled to any relief.**

> e. Costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law, jointly and severally against all Defendants;

**RESPONSE: Defendants deny Plaintiff is entitled to any relief.**

19-317-NJR-GCS                    27

f.  Pre- and post-judgment interest at the lawful rate, jointly and severally against all Defendants; and

**RESPONSE:  Defendants deny Plaintiff is entitled to any relief.**

g.  Any other relief that this Court deems lawful, equitable and proper.

**RESPONSE:  Defendants deny Plaintiff is entitled to any relief.**

### DEMAND FOR JURY TRIAL

81.  Lawrence hereby demands a trial by jury on all issues.

### Requests to Plaintiff's Requests for Relief

Defendants deny Plaintiff is entitled to any relief whatsoever.

### Jury Demand

Defendants demand a trial by jury in this matter.

### Affirmative Defenses

#### Eleventh Amendment Sovereign Immunity

Plaintiff's claims for monetary damages against Defendants in their official capacities are precluded by the Eleventh Amendment, which bars an action for damages in federal court against a State or a State official sued in their official capacity.

#### Administrative Exhaustion

Plaintiff has filed suit concerning incidents which occurred while Plaintiff was incarcerated within the Department of Corrections.  Plaintiff has failed to properly exhaust administrative remedies as is required prior to filing suit under 42 U.S.C. §1983 and his claims are, therefore, barred by the Prison Litigation Reform Act (42 U.S.C. § 1997e(a)) and *Perez v. Wisconsin Dept. of Corrections*, 182 F. 3d 532 (7th Cir. 1999).

### Qualified Immunity

At all times relevant herein, Defendants acted in good faith in the performance of their official duties and without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants, therefore, are protected from suit by the doctrine of qualified immunity.

### Public Official Immunity

At all times relevant to the complaint, Defendants were performing official discretionary duties in good faith and are entitled to Public Official Immunity.

### State Lawsuit Immunity Act

Any State tort claims against Defendants are barred by the immunity provided in the State Lawsuit Immunity Act.

### Injunctive Relief Barred

To the extent Plaintiff is suing Defendants for declaratory relief or injunctive relief not intended to address ongoing violations, Plaintiff's requests for such relief are barred by the Eleventh Amendment, sovereign immunity, and the Prison Litigation Reform Act.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request that

this Honorable Court enter judgment in their favor and against Plaintiff, and deny any and all relief

requested by Plaintiff in this matter.


Respectfully submitted,

JOSEPH HARPER, BARRY SMOOT, JARRETT
BROOKS, SHIRLEY FORCUM, GREGORY
SCOTT, WILLIAM MILLER, MELISSA
MILLER, and MICHAEL SIEGFRIED,

Defendants,

KWAME RAOUL, Attorney General,
State of Illinois,

Attorney for Defendants,


By   s/ R. Brandon Shultz
R. Brandon Shultz #6331528
Assistant Attorney General
Metro East Office
201 West Pointe Drive, Suite 7
Belleville, IL 62226
Telephone:  (618) 236-8781
Facsimile:  (618) 236-8620
Email: rshultz@atg.state.il.us

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DENZIL LAWRENCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-00317 NJR-GCS |
| | ) |
| GREGORY SCOTT. et al., | ) |
| | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2019, the foregoing document, ***Defendants' Answer***

***and Affirmative Defenses,*** was electronically filed with the Clerk of the Court using the CM/ECF

system which will electronically send notice to:

Thomas S. Stewart – Sstewart@tresslerllp.com
Tressler LLP – Clayton
7777 Bonhomme Ave
Suite 1800
Clayton, MO 63105

and I hereby certify that on the same date, a copy of the foregoing document was mailed by United
States Postal Service, in an envelope properly addressed and fully prepaid, to the following non-
registered participant:

None

Respectfully submitted,

By   s/ R. Brandon Shultz
R. Brandon Shultz #6331528
Assistant Attorney General
Metro East Office
201 West Pointe Drive, Suite 7
Belleville, IL 62226
Telephone:  (618) 236-8781
Facsimile:  (618) 236-8620
Email: rshultz@atg.state.il.us